SAYWARD v. DEXTER, HORTON & CO.

(Circuit Court of Appeals, Ninth Circuit. February 10, 1896.)

No. 215.

1. CONTRACTS—BENEFIT OF THIRD PARTY—AGREEMENT NOT TO SUE.
    S. was the owner of a lumber mill, at which he carried on the business of manufacturing lumber. Under an agreement with the firm of H. & S., the latter advanced moneys to S., and furnished him with goods for use

in operating the mills, the product of which was consigned to H. & S., who sold the same, and accounted for the proceeds, applying them on their account against S. At a time when S. was largely indebted to H. & S., the latter entered into a contract with one H., by which it was agreed that H. should thereafter make advances and furnish supplies to S., and the product of S.'s mill should be consigned to H., who agreed to pay H. & S. on account of their claims against S., $20,000 down, and $2,500 per month thereafter, until the indebtedness of S. to H. & S. was satisfied; and, in consideration thereof, H. & S. agreed not to attempt, during the life of the contract, and while its terms were complied with, to enforce their claims against S. by assignment thereof, or otherwise. S. was not a party to the contract, though his consent to its provisions was recited. The terms of the contract were duly performed by H., but, before its expiration, H. & S. assigned their claims against S. to D. & Co., who brought suit thereon against S., and attached his property. S. pleaded in abatement the agreement not to enforce claims, contained in the contract between H. and H. & S. *Held*, that such plea was bad, S. not being a party to the contract, and there being nothing to show that the stipulation not to sue was made for his benefit, and not merely for the protection of H. in making the payments agreed on for his account.

2. LIMITATIONS—ACCOUNT STATED—SEPARATE ITEMS.
 In an action upon an account stated, consisting of a series of monthly statements, showing items and balance due, rendered to and accepted by the defendant, the defense of the statute of limitations is not available as to separate items entering into such statements of account.

3. INTEREST—AGREEMENT AS TO RATE.
 Where no usury law prevails, but any rate of interest specified in writing by the parties to a contract is valid and legal, if monthly statements of account are rendered by a merchant showing items of goods sold, interest thereon at a rate above that fixed by statute in the absence of contract, credits, and balance due, interest being calculated in each succeeding month on the balance of the preceding one, including the items of interest therein, such rendition and the acceptance of such statements by the customer, during a series of months, constituting a regular course of business, amount to an adoption of the rate of interest charged, with the same effect as if there had been an express agreement in writing.

Appeal from the Circuit Court of the United States for the District of Washington.

This was an action by Dexter, Horton & Co. against W. P. Sayward on an account stated. Judgment was rendered for the plaintiff in the circuit court. 66 Fed. 265. Defendant brings error. Affirmed.

Battle & Shipley, J. B. Howe, and W. Lair Hill, for plaintiff in error.

Blaine & De Vries and Struve, Allen, Hughes & McMicken, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. Dexter, Horton & Co., a banking corporation, brought an action against William P. Sayward, the plaintiff in error, upon an account stated for $227,768.86, alleging that on an accounting had on the 30th day of September, 1891, between Harrington & Smith, of Seattle, Wash., and the said Sayward, that amount had been found due and owing to the said Harrington & Smith, and that the said account so stated had been subsequently

sold and assigned by them to said Dexter, Horton & Co. At the time of the commencement of the action, a writ of attachment was sued out under the laws of the state of Washington, upon the grounds—First, that the said W. P. Sayward was a nonresident of that state; and, second, that he had assigned, secreted, and disposed of his property with intent to delay and defraud his creditors. Under this writ, a large amount of property in the state of Washington, belonging to the said Sayward, was attached. To the action so commenced, a plea in abatement was filed by Sayward, in which he set forth that on the 18th day of October, 1890, he was, and for a long time prior thereto had been, the owner of extensive lumber mills at Port Madison, Wash., known as the "Port Madison Mills," and was engaged in the business of manufacturing large amounts of lumber at said mills; that, at the date so named, there existed an agreement between him and Harrington & Smith, by which the latter furnished him goods and merchandise to be used by him in operating said mills, and he, in turn, delivered and consigned to said firm, at San Francisco and other places, lumber, the product of said mills, which Harrington & Smith sold and accounted for and applied to his credit on their account against him for supplies so furnished; that on said 18th day of October, with Sayward's consent, and in pursuance of an understanding and agreement between him and one E. M. Herrick, of San Francisco, which agreement was known to Harrington & Smith, the firm of Harrington & Smith and said Herrick entered into a contract in writing, as follows:

"Memorandum of agreement, made and entered into this eighteenth day of October, A. D. 1890, at San Francisco. California, by and between the firm of Harrington & Smith, a copartnership, engaged in general merchandising business, whose principal place of business is at Seattle, Washington, and who are represented at the city and county of San Francisco, state of California, by Andrew Smith, a partner, by virtue of authority to sign its firm name, vested in Andrew Smith, and by such signature to bind all the partners of said firm, the party of the first part, and E. M. Herrick, doing business at the city and county of San Francisco, state aforesaid, the party of the second part, witnesseth: That whereas, the said party of the first part has, at sundry times previous to the date of this agreement, furnished goods, wares, and merchandise, and advanced moneys, to Wm. P. Sayward, owner of the Port Madison Mills, receiving from said Port Madison Mills certain products (to wit. lumber, etc.), which said products the said party of the first part has heretofore consigned to said party of the second part for sales and returns, and that, growing out of the connection of said party of the first part with said Wm. P. Sayward and said Port Madison Mills, said party of the first part has certain claims against said Wm. P. Sayward, which said party of the first part desires to make available as rapidly as possible; and whereas, said party of the second part, with the consent of said Wm. P. Sayward, and under the conditions hereinafter recited, undertakes to make certain payments on account of said claim of party of the first part against Wm. P. Sayward; and whereas, the said party of the second part has entered into certain arrangements with Wm. P. Sayward and said Port Madison Mills to receive consignments of its products (to wit, lumber, etc.), for sales and returns, furnishing funds and supplies, as may be agreed between said party of the second part and said Wm. P. Sayward, and which arrangements said party of the first part hereby permits said party of the second part to enter into and with said Wm. P. Sayward: Now, therefore, in consideration of the sum of five ($5) dollars paid by each of the parties hereto to each other, the receipt whereof by each is

hereby acknowledged, and, further, the covenants and agreements hereinafter recited, the said parties hereto hereby covenant and agree as follows, to wit: 1st. That said party of the first part agrees that on and after November 1st, 1890, said party of the second part hereafter may supply and furnish directly to said Wm. P. Sayward goods, wares, merchandise, and supplies, as required by said Port Madison Mills, purchasing same at the city and county of San Francisco, or otherwise, as said party of the second part may elect. And, further, that the said Wm. P. Sayward may, on and after such date, consign directly, to said party of the second part, all products (to wit, lumber and kindred material) the shipment of which shall not have been made from Port Madison Mills at said date except cargoes now loading; said consignments being for sales and returns by said party of the second part for account of said Wm. P. Sayward. 2d. That all shipments made by said Wm. P. Sayward from Port Madison Mills prior to said date, including all cargoes loading at mill on Oct. 20, 1890, and consigned to said party of the second part, shall be deemed as for account of said party of the first part; and proceeds thereof shall be paid by said party of the second part to said party of the first part as soon as realized, it being understood and agreed that all claims against said Wm. P. Sayward or said Port Madison Mills for wages, logs, supplied prior to said date, shall be paid for or liquidated by said party of the first part, as heretofore. 3d. Said party of the first part agrees that, so long as the covenants assumed by said party of the second part hereinafter recited are fully carried out by said party of the second part, said party of the first part will not by any action or procedure whatsoever, whether by assignment of said claims or otherwise, enforce or attempt to enforce said claims against said Wm. P. Sayward; but nothing in this clause shall be deemed to restrain said party of the first part from maintaining the legal life of such claims as said party of the first part may have against said Wm. P. Sayward or said Port Madison Mills. 4th. For and in consideration of above, the said party of the second part agrees to pay to said party of the first part, on or before the thirty-first day of October, A. D. 1890, the sum of twenty thousand dollars, which sum shall be credited by said party of the first part upon its claims against said Wm. P. Sayward, and duplicate receipts for such payments shall be given by said party of the first part, one to said party of the second part, the other to said Wm. P. Sayward or said Port Madison Mills; and such receipts shall recite briefly the conditions of said payment. 5th. And said party of the second part agrees to pay to said party of the first part, or its order, the sum of twenty-five hundred dollars monthly, during each month hereafter, during the term of this agreement, and, further, agrees to pay to said party of the first part, from time to time, all such surplus as may be in the hands of said party of the second part, growing out of the management of the business of said Port Madison Mills by said party of the second part, and the connection of said party of the second part with said Port Madison Mills, as hereinbefore recited; all of said payments being evidenced by receipts for their amount, given by said party of the first part to said party of the second part, reciting that such payments are for account of said Wm. P. Sayward, and the application of said payments by said party of the first part, upon its said claim against said Wm. P. Sayward, shall be as may be arranged between said party of the first part and said Wm. P. Sayward. It is further understood by each of the parties hereto that, so long as the covenants by each hereinbefore recited are fully kept and maintained, this agreement shall be deemed to be in force for not less than the term of three (3) years from said November 1st, 1890, excepting, always, that, if at any time said party of the second part or said Wm. P. Sayward shall cause to be satisfied and liquidated the claims of said party of the first part against said Wm. P. Sayward, said party of the first part shall transfer to said party of the second part all liens and claims, whether recorded or otherwise, vesting in said party of the second part all right, title, and interest of said party of the first part in and to same, this agreement shall be terminated.

"In witness whereof, the said parties hereto have set their hands and seals, in duplicate, this eighteenth day of October, 1890.

"[Signed]                        Harrington & Smith.   [Seal.]
                                 "E. M. Herrick.         [Seal.]"

The plea further alleged that, in pursuance of said agreement, the parties thereto and the said Sayward entered upon the performance thereof, and that Herrick paid Harrington & Smith the sum of $20,000, and $2,500 per month each month until and including the month of December, 1891, and that all of said payments were received and accepted by said firm as payments for the said Sayward, in accordance with said agreement; that Sayward and Herrick did keep and perform all covenants and conditions of said contract to be kept and performed by them, until prevented from so doing by the attachment in said action; that Dexter, Horton & Co., at the time of the commencement of the action, knew of the said agreement and its performance by Herrick and Sayward, and knew that the assignment of said account was in violation of the terms of said agreement, and that the commencement of the action was also in violation of said agreement and the extension of credit therein provided for.

A demurrer to the plea in abatement was sustained. Thereupon Sayward moved to discharge the writ of attachment, upon affidavits setting forth substantially the facts that were alleged in the plea. The motion was overruled. Sayward then filed his answer to the amended complaint, denying the material allegations thereof, and alleging errors and omissions in the account, and setting forth again the matters so pleaded in abatement. The answer also pleaded the statute of limitations to a portion of the account. To the matters contained in the answer surcharging and falsifying the account, replication was filed. To the other defenses, the plaintiff filed a general demurrer, which was, upon argument, sustained by the court. The said cause was thereupon, on the written stipulation of the parties, sent to a referee, who reported findings of fact and conclusions of law, to the effect that the defendant in the action was indebted to the plaintiff therein, upon an account stated, in the sum of $130,308.67, and interest thereon from September 30, 1891. To this report both parties filed exceptions, which were heard before the court. Thereupon the findings of fact of the referee were adopted by the court, but his conclusions of law were modified, the court holding that the plaintiff in the action was entitled to recover the sum of $153,128.89, and interest thereon from September 30, 1891, at the rate provided by the statute laws of Washington, amounting in the aggregate to $192,627.64. On writ of error to this court, the principal contention of the plaintiff in error is that the facts pleaded in the plea of abatement filed by the defendant in the action were sufficient to abate said action, and to preclude the plaintiff from suing on said statement of account until the expiration of the period of three years, during which Harrington & Smith had covenanted not to enforce, or attempt to enforce, their demand against Sayward.

Upon consideration of the terms of the agreement, it is clear that there are but two parties to its covenants. The circumstances under which it was entered into may properly be considered in interpreting its provisions. For some time prior to that date, Harrington & Smith, of Seattle, had furnished supplies and mer-

chandise for the operation of the Port Madison Mills, and, in return, had managed and disposed of the output of lumber therefrom, through E. M. Herrick, at San Francisco. Under this arrangement, there was no express contract for extension of the time to pay the large balance owing from Sayward to Harrington & Smith. The account was overdue at all times, and Sayward could have been sued thereon at any moment. The allegation in the answer that, by the terms of the agreement then existing, "Harrington & Smith agreed that whatever might become due them by reason of said transactions was to be paid out of the profit of said mill," is not sufficient to show that Harrington & Smith agreed to look solely to the profit of the mill for their reimbursement for outlays, or that they were not to be otherwise paid, or that they would not hold Sayward personally liable for the debt. At the time of entering into the new agreement, it was desired by the parties thereto to substitute Herrick for Harrington & Smith in the future business of the Port Madison Mills. It was the purpose of the agreement to provide that, from and after the date thereof, Herrick, and not Harrington & Smith, should furnish the supplies and merchandise necessary for the operation of the mills, and that the lumber should be consigned directly to him, and that he should dispose of the same, and render his account to Sayward, but that, out of the proceeds, certain monthly fixed payments should be made upon the balance due Harrington & Smith. The new arrangement did not necessarily concern Sayward. For aught that appears in the agreement or in the allegations of the plea, it was matter of indifference to him whether his advances or supplies should come from Harrington & Smith or from Herrick, and whether the product of his mill should be handled by the one or by the other of the two parties to the agreement.

This view of the agreement does not deprive Sayward of any right he enjoyed under the former agreement. It leaves him in substantially the same position that he occupied before. Prior to the agreement, the balance he owed for advances was due, and payment was enforceable at any time by legal proceedings. Under the new arrangement, there was no greater reason than had before existed why provision should be made for his immunity from suit during a period of three years, or for any fixed period. The references in the contract itself to Sayward are not evidence that Sayward was a party in interest therein, or that he was privy thereto. It is recited, it is true, that Herrick, with the consent of Sayward, and under the conditions expressed in the agreement, undertakes to make the payments to Harrington & Smith which the agreement calls for. To say that Sayward assented to these payments is but to say that the arrangement between the parties to the agreement was satisfactory to him, and that he made no objection thereto. It indicates that he consented to the substitution of Herrick for Harrington & Smith, as contemplated by the contract. It is not to be construed as evidence that Sayward made any of the covenants in the agreement, or was privy thereto, or that he exacted the abstention from suit which is stipulated for by its terms. There is also in the contract an allusion

to an arrangement between Sayward and Herrick, but no information is afforded of its terms, except that it is an arrangement to receive consignments of lumber for sales and returns, and to furnish funds and supplies as may be agreed between them. It may be inferred from this recital that there was a separate contract or agreement between Sayward and Herrick. But this reference to an arrangement, so far from connecting Sayward with the contract in question, makes it evident that all the rights of Sayward, so far as they were protected by contract, were provided for in a separate agreement, the terms of which are not disclosed. If it had been intended by the parties to the contract between Harrington & Smith and Herrick to protect Sayward as well as Herrick against the legal enforcement of Harrington & Smith's demand, it is difficult to perceive why Sayward was not made a party to the agreement, and why such provision was not expressly set forth in terms. Nor do the allegations of the plea add to the force of the terms of the contract, so as to sufficiently connect Sayward therewith, or to show that he was a party or privy thereto. Those averments are that the contract was made with the consent and acquiescence of Sayward, and in pursuance of an understanding and agreement between him and Herrick, and that, after its execution, Herrick and Harrington & Smith and Sayward entered upon the performance thereof, and that Herrick made the payments contemplated therein, and that Sayward and Herrick have kept and performed all the covenants and conditions of said contract to be kept and performed by them. There were no covenants and conditions expressed in the contract that were to be kept or performed by Sayward, and these allegations add nothing to the force and effect of the contract itself. They mean no more than that the contract was complied with up to the time of commencement of the suit, that is to say, each party thereto performed his part. So far as Sayward was concerned, he had not in the contract bound himself to do anything. He had not agreed to furnish the product of the Port Madison Mills to Herrick, nor had he agreed to receive funds and supplies from Herrick. So far as the terms of the contract are concerned, neither of the parties thereto could have compelled Sayward to do or refrain from doing any act therein specified. If he were in any way bound to acquiesce in the arrangement contemplated in the contract, it was by virtue of a separate agreement with one or both of the other parties. His right to plead in abatement of this action an agreement in forbearance of suit depends wholly upon the terms of such agreement. He cannot call to his aid covenants made between Harrington & Smith and Herrick, to which he was not a party or privy. But it is contended that, notwithstanding the fact that Sayward is not a party to the contract, the covenant not to sue was made for his benefit, and he may therefore enforce it. It is true there are exceptions to the general rule that the parties or privies to a contract or to its consideration are the only persons who may avail themselves of its provisions, and one of the exceptions is the case of a contract which contains an express promise for the benefit of a third person. Although this doctrine is now denied in England, and is disputed in some of the states, the weight of American authority is in its favor.

Said Mr. Justice Davis, in Hendrick v. Lindsay, 93 U. S. 149: "The right of a party to maintain assumpsit on a promise not under seal, made to another for his benefit, although much controverted, is now the prevailing rule in this country." But it is not every contract for the benefit of a third person that is enforceable by the beneficiary. It must appear that the contract was made and was intended for his benefit. The fact that he is incidentally named in the contract, or that the contract, if carried out according to its terms, would inure to his benefit, is not sufficient to entitle him to demand its fulfillment. It must appear to have been the intention of the parties to secure to him personally the benefit of its provisions. National Bank v. Grand Lodge, 98 U. S. 123; Wright v. Terry, 23 Fla. 160, 2 South. 6; Burton v. Larkin, 36 Kan. 246, 13 Pac. 398; Chung Kee v. Davidson, 73 Cal. 522, 15 Pac. 100; Railroad Co. v. Curtiss, 80 N. Y. 219; Vrooman v. Turner, 69 N. Y. 280; Greenwood v. Sheldon, 31 Minn. 254, 17 N. W. 478; Austin v. Seligman, 18 Fed. 520. There is nothing in the contract made by Harrington & Smith with Herrick indicative of an intention to protect Sayward from suit except for Herrick's own benefit. The parties to that agreement evidently had in view their own advantage, and not Sayward's. It was clearly for Herrick's protection primarily and chiefly that the stipulation in question was inserted. If it was the intention to protect Sayward also, that purpose was only incidental and secondary. Sayward incurred no new risk under the new contract. His attitude of debtor to Harrington & Smith was not changed by the new arrangement. It remained the same as before. The only difference was that his future advances were to come from Herrick. But Herrick's relation was materially changed. He assumed new obligations. He was required to pay out large sums of money to Harrington & Smith, and to make to Sayward the advances necessary for carrying on the business. He could not safely undertake these covenants of the contract without stipulating for Sayward's protection against the suit of Harrington & Smith. We find no error, therefore, in the ruling of the trial court upon the demurrer to the plea in abatement or to the plea in bar set forth in the answer.

It follows from the construction we have given to the terms of the contract and the plea in abatement, that there was no error, as charged in the second assignment, in the refusal of the court to dissolve the attachment, and in including in the final judgment the order that the attached property be sold and applied to the payment of the judgment debt. One of the grounds upon which the writ was issued was the fact that the defendant, Sayward, was nonresident within the state. The affidavit alleging that fact was not contradicted on the motion to dissolve, and that ground of attachment continued to exist until the final determination of the case. The debt has been shown to have existed. If there were error in issuing the writ of attachment, such error is not ground to reverse the judgment and to order a new trial. It is only where the judgment erroneously assumes to dispose of attached property that this court may, upon writ of error, consider the validity of the attachment. In such a case the function of the court is limited to the power to modify or

reverse that portion of the judgment which concerns the disposition of the property. In this case there existed a valid cause of action and a ground of attachment, and the property was actually levied upon under the writ. There was no error, therefore, in ordering it sold for the satisfaction of the judgment.

It is further assigned as error that the court sustained the demurrer to the third affirmative defense, contained in the sixteenth paragraph of the answer to the amended complaint. The language of the affirmative defense so demurred to is as follows:

"Defendant, for a further answer and defense, says that the alleged cause or causes of action in favor of the plaintiffs herein, or Harrington & Smith, hereinbefore mentioned, or either of them, as to the items or any of the items set forth and mentioned in the preceding paragraph twelve of this answer, denominated discounts, interest per month (compounded monthly), unauthorized and illegal charges, miscellaneous charges against defendant of discount, interest, attorney's fees, etc., did not accrue to the said plaintiff, or the said Harrington & Smith, or either of them, within three years next before the commencement of this action, nor at any other time. Said paragraph twelve of this answer, referred to above, is made a part of this further, affirmative, separate answer and defense."

The paragraph 12 referred to in this plea of the statute of limitations is that portion of the answer which attempts to surcharge and falsify certain of the items of the account which are alleged by the plaintiff to have entered into the stated account upon which he sought to recover. The answer, it is true, denied that there had been an accounting, as alleged in the amended complaint; and it alleged that objection had been made by the defendant to certain statements rendered by Harrington & Smith purporting to show the state of the account between the parties; and a long list of items, beginning with April, 1882, and extending to November, 1891, was set forth in paragraph 12, and declared therein to be erroneously and improperly charged. If there had, in fact, been no accounting between Harrington & Smith and the defendant, and it had been attempted in this action to recover upon an open account, and not a mutual account, no reason is perceived why a plea of the statute of limitations as to the items that accrued more than three years before the commencement of the suit would be open to demurrer; but the suit was brought upon an account stated. In the findings of the referee, which were adopted by the court in rendering judgment, it was found that there had been such accounting as was declared upon. That accounting consisted in the rendering of a monthly statement from Harrington & Smith to Sayward, in which there was reiterated each month a balance showing the liability of Sayward to Harrington & Smith, as deduced from all their antecedent dealings. Such statement of account, assented to by Sayward, as found by the referee and the court, amounts to an adoption of, and assent to, the figures showing the condition of the account at the date of each statement. It is unnecessary to determine whether, under the statute of Washington (section 131 of the Code of 1891) which provides that the new promise to pay a pre-existing debt must be in writing in order to take the case out of the operation of the

statute of limitations, a former balance found under a prior accounting may be kept alive after it would otherwise be barred by the statute, by bringing it forward, and prefixing the amount thereof to each subsequent monthly statement of account, and incorporating the same therein, for that question is not presented in this case. The plea of the statute of limitations is not directed against any such item in the accounting. It does not allege that any balance found due at any prior accounting is barred by the statute of limitations. It is directed purely against a long series of items covering a period of nine years, all of which went into the accounting, and were merged when the balance was arrived at, constituting an independent debt, from the date of which the statute of limitations began to run, and not before. Toland v. Sprague, 12 Pet. 300; Spring v. Gray, 6 Pet. 156; Keller v. Jackson, 58 Iowa, 629, 12 N. W. 618; Union Bank v. Knapp, 3 Pick. 96; Ramchander v. Hammond, 2 Johns. 200.    There could be no error, therefore, in sustaining a demurrer to the plea of the statute of limitations; for, upon the state of the case as evidenced now upon the record, it is ·clear that such defense was not available to the defendant, and he is not injured by the ruling.

It is assigned as error that the court held valid and legal the charges of interest made by Harrington & Smith against Sayward. It appeared from the findings of fact that the course of dealing between the defendant and Harrington & Smith was as follows:    Beginning with June 1, 1884, and continuing to November 30, 1891, Harrington & Smith charged interest upon the general monthly balance of account due them from defendant, including the amount due for merchandise, as well as for cash advanced and discount thereon, and included the amount due as interest in the balance which appeared as the first item of charge upon each monthly statement, upon which interest was, in turn, charged.    During that period Harrington & Smith allowed 60 days' credit upon all amounts for merchandise furnished by them, and charged interest thereon only after the expiration of 60 days from the end of the month in which the goods were furnished. They· also allowed the defendant, as a credit, interest upon all sums received by them as payments upon the account of defendant during said month, at like rates as were charged by them. The difference between the debit of interest and the credit of interest was the sum charged as interest by said firm at the end of each month upon said general balance of account. The rates of interest were as follows:    From June 1, 1884, to February 28, 1885, 1 per cent. per month, compounded monthly; from March 1, 1885, to May 31, 1888, $1\frac{1}{4}$ per cent. per month, compounded monthly; from June 1, 1888, to September 30, 1891, 10 per cent. per annum, compounded in said monthly statements. It appeared, also, that it was the custom of Harrington & Smith, and the general custom of merchants at Seattle at that time, to charge interest upon unpaid bills of merchandise after the expiration of 60 days from the date of purchase, and that the rates of interest charged by Harrington & Smith were not greater than those ordinarily charged

by other merchants; that during that period it was the custom of Harrington & Smith to forward to the defendant, upon each day when they furnished goods, an itemized statement thereof, and, at the end of the month, it was their custom to furnish a general monthly statement, including a statement of all goods furnished, of all moneys advanced as expense of the mills, and all moneys advanced in payment of principal and interest on account of defendant; also, of interest upon their said account against the defendant, in the following manner: The defendant was debited with all goods furnished and moneys advanced, and he was credited with all moneys received as proceeds of cargoes of lumber, and a balance was struck showing the state of his account with the firm at the end of each month. This balance was carried forward as the first item in next month's account in the statement thereof. The court held that the charges of compound interest upon the monthly balances could not now be objected to by the defendant; that this method of keeping and rendering accounts had continued so long as to become a regular course of dealing between the parties, and had been known and not objected to by defendant for a number of years. The laws of Washington territory at the time of these transactions provided as follows:

"Any rate of interest agreed upon by parties to a contract, specifying the same in writing, shall be valid and legal." Code 1881, § 2369.

The court held that there arose upon each of these accounts stated an implied promise to pay the entire balance shown thereby, including these items of interest, and that the charge thereof was not illegal.

In Young v. Hill, 67 N. Y. 162, 171, it was said:

"Compound interest is recoverable upon merchants' accounts of mutual dealings, upon an express agreement, or when an agreement may be implied from custom or usage, for the reason that an extension of time for payment is implied, and the transaction is fair, as the balance may change, and the benefit of the usage be mutual."

Upon page 172 it was said:

"Upon a like statement of account and of a balance due between merchants, the law implies a promise, for the reason that the several items, when established, constitute legal demands of the respective parties against each other, upon which an action would lie; and the acknowledgment is an admission of the correctness of the items of debit and credit, resulting in the stated balance."

In Backus v. Minor, 3 Cal. 231, a similar doctrine was held. The court said:

"The dealings of the parties run through a period of more than two years. During this time the appellants render to the defendant three or four stated accounts, showing balances. In all of these accounts, and through the whole of this time, they pursue the one mode of calculating interest. It has become their way of doing business."

In Marye v. Strouse, 6 Sawy. 205, 5 Fed. 483, the court said:

"I find, then, that Strouse knew the rate of interest charged against him in his account. There was no mistake or fraud about it. Having this knowledge, he not only receives and retains accounts without objection, but even pays them. The method of keeping and rendering accounts continued so long as to become a regular course of dealing between the parties. Under such cir-

cumstances, the authorities are clear that an account stated cannot be opened because an item of interest which went into it could not have been recovered by suit, provided such item is not illegal."

The charges of interest, as disclosed by the state of the account between Harrington & Smith, were not illegal under any statute of Washington. There was no usury law applicable to the case. There was a statutory rate fixed to control the rate of interest in the absence of agreement, but there was no statute prohibiting the parties from charging against each other, in their mutual accounts, any rate of interest that they might see fit to adopt. Their current credits and payments upon account, and their acquiescence in the accounts stated, amounted to an adoption of the rate charged, with the same effect as if there had been an express agreement in writing to pay the same. Auzerais v. Naglee, 74 Cal. 60, 15 Pac. 371; Van Vleet v. Sledge, 45 Fed. 750; McKnight v. Taylor, 1 How. 168.

Several of the assignments of error bring in question the sufficiency of the evidence to establish the findings of fact made by the referee, and adopted by the court. It is not contended, nor does it appear, that there was absolutely no evidence upon which to base those findings. The contention is that, upon the evidence adduced, the findings should have been different. That contention cannot be considered in this court.

By section 649 of the Revised Statutes it is provided that:

"The finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury."

And section 700 provides as follows:

"When an issue of fact in any civil cause in a circuit court is tried and determined by the court without the intervention of a jury, according to section 649, the rulings of the court in the progress of the trial of the cause, if excepted to at the time, and duly presented by a bill of exceptions, may be reviewed by the supreme court upon a writ of error or upon appeal; and when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment."

Under these statutes and the established construction given them by the courts, the power of this court is limited to the determination of the question whether errors were committed by the trial court in its rulings during the progress of the trial, and whether the special findings made by the court were sufficient to support the judgment. Norris v. Jackson, 9 Wall. 125; Miller v. Insurance Co., 12 Wall. 285; Dirst v. Morris, 14 Wall. 484; Insurance Co. v. Folsom, 18 Wall. 237; Stanley v. Supervisors, 121 U. S. 535, 7 Sup. Ct. 1234; British Queen Min. Co. v. Baker Silver Min. Co., 139 U. S. 222, 11 Sup. Ct. 523.

It is contended that the court erred in holding that the monthly statement sued upon amounted to or was a stated account. The course of dealing between the parties has already been referred to. During the period of time which it covered, regular monthly statements were rendered to Sayward, in pursuance of the original agreement entered into between the parties. In the thirty-third finding of fact, it was found that the monthly statements were furnished and rendered "for the purpose of showing to said defendant how his ac-

count with them stood at the end of each month." The thirty sixth finding is as follows:

"With the exception of some objections to minor errors in said statements, which, upon complaint being made, were corrected by said Harrington & Smith, no objections were made to said statements of account, or to any items of charge or credit therein contained, either by the said George A. Meigs, or by the defendant, until after the beginning of this action."

Upon these findings of fact, there can be no question that the court correctly held the monthly statement to be an account stated. Wiggins v. Burkham, 10 Wall. 129; Marye v. Strouse, 6 Sawy. 205, 5 Fed. 483; Auzerais v. Naglee, 74 Cal. 64, 15 Pac. 371; Knickerbocker v. Gould, 115 N. Y. 537, 22 N. E. 573.

There are numerous assignments of error to the rulings of the court upon the admission of testimony. We are unable to discover that any of them were erroneous. Most of the questions so raised relate to the admission of testimony concerning payments alleged to have been made by Harrington & Smith upon certain judgments then outstanding, which payments were charged in the account against Sayward, and were carried into the regular monthly statements. Upon the part of Sayward, it is contended that these payments were not on account of his debt, and that they were illegal and void, and not proper charges against his account. Upon the part of the defendant in error, it is contended that the judgments so paid were judgment liens against the mill property of the defendant, and that the payments were necessary for its preservation and for the continuation of the business of said mills. It was found by the court that these payments were authorized. The evidence being offered upon the issues so raised was clearly not immaterial. But the plaintiff in error further raises the question whether, upon the facts found by the referee and the court, it follows as a legal conclusion that the payments of said judgments could be charged individually against Sayward, and reference is made to the twenty-eighth finding of fact, in which it was said that the defendant had delivered to Crawford & Harrington, predecessors of Harrington & Smith, a written order, and that the same is now lost or destroyed, and cannot be found, the substance of which was a request and authority from the defendant to make advances required by the said Port Madison Mills, and to charge the same to defendant's account. It is contended that this order was the exclusive authority for making advances, and that it was not sufficient to include the payment of judgments against the property. The terms of the order are not stated in the finding, except that, in general terms, the advances were to be such as were required by the Port Madison Mills. But there is another finding which must be taken into consideration in this connection, namely, the twenty-sixth, where it was found that the defendant "also authorized and requested said Crawford & Harrington to advance such sums of money as should be required from time to time to pay off such of the indebtedness of George A. Meigs and the Meigs Lumber & Shipbuilding Company as, being in the form of liens upon the property purchased by him, would, if not paid, result in the sale of the property, and the shutting down of the mills, and to charge all such

sums due for such advances to the defendant's account." But if the written order referred to in the twenty-eighth finding of fact, were, indeed, the sole authority to make payments upon judgments, the defendant could not now be heard to dispute those items of the account. Those payments were made in good faith, as the record shows, and were regularly and periodically reported to Sayward, in the monthly statements of accounts, and no objection was made to any thereof until after the commencement of this action.

Upon the consideration of the whole case and the numerous assignments of error, we find no ground for reversing or modifying the judgment; and it is accordingly affirmed, with costs to the defendant in error.