**HALL v. GARDINER et al.**

No. 7885.

United States Court of Appeals for the
District of Columbia.

Argued Jan. 8, 1942.

Decided Feb. 16, 1942.

228

Messrs. Huston Thompson and Herbert S. Ward, both of Washington, D. C., for appellant.

Mr. Joseph T. Sherier, of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

## GRONER, C. J.

This suit was commenced in the court below on a bill filed by appellant as receiver of Federal-American National Bank and Trust Company to recover from appellee Gardiner, (1) the sum of $2,890.01, claimed to have been wrongfully retained by him, as compensation, as manager of a certain apartment building in the City of Washington, and (2) the sum of $6,435.61, being certain net rents of the apartment collected by him in the same capacity. Appellant's suit is based on an alleged trust agreement claimed to operate to his benefit as receiver of the bank. After hearing, the trial judge found in favor of Gardiner and dismissed the complaint.

The facts are these. In 1926 Prudential Insurance Company held a first trust of $125,000 on the Lonsdale Apartment in Washington City. Mortgage Investment Company held a second trust of $55,750, payable at the rate of $250 monthly, and Gardiner held a third trust of $35,000. In March, 1931, Investment Company borrowed on its own demand note from American National Bank and Trust Company $12,000, pledging as security its $55,750 second trust note (then reduced by the monthly payments to something less than $50,000), and agreeing to reduce its own note by payments of $500 per month. It was the understanding between the bank and Investment Company that payments of interest and principal made on the second trust note would continue to be received by Investment Company to its own use. In August, 1932, the owner of the apartment being unable to pay the agreed installments and interest on the second trust note, offered to convey title to Investment Company. Investment Company declined the offer, but requested Gardiner (the holder of the third trust) to take title on his own account and for his own interest. Gardiner agreed, and Investment Company's board adopted a resolution reciting the facts just stated and requesting that the property be conveyed to Gardiner, who would take title subject to the first and second trusts, but "without assuming any existing obligations whatsoever", except that he would manage and control the property and collect the rents and disburse them in the following order: "(1) To the payments for repairs and improvements as he shall determine; (2) the payment of taxes and interest on the first mortgage; (3) the payment of principal and interest on the second mortgage held by the Mortgage Investment Company". The resolution recited that the "arrangement shall come to an end on October 29, 1933". As a result, Gardiner became owner of the property in September, 1932. Two months later, the trust to Prudential being in default, it demanded that Gardiner turn over to it the entire net rents from the property to be applied to the payment of interest and in discharge, in part, of its principal debt. Advised of this, Investment Company relinquished its rights under the agreement, and Gardiner complied with Prudential's demand and paid all of the net rents to it until the month of June, 1937, except the sum of $2,890.01 which Prudential, without objection from Investment Company or anyone else, allowed him for his services from 1934 to 1937 as collector of the rents. In the meantime and up to March 6, 1933, when the bank closed its doors, Investment Company from time to time made satisfactory reductions of its $12,000 note, and no de-

mand for payment in full was ever made by the bank. Subsequently, the bank's affairs were put in the hands of Hardee, Receiver, who was succeeded in turn by the present appellant, Hall. At the time of appointment of the bank receiver, the note indebtedness of Investment Company to the bank had been reduced from $12,000 to $8,411.05. Presumably, no further payments were made, and in February, 1935, the receiver made demand for payment in full and upon default sold the second trust note deposited by Investment Company as collateral to its note, and bought it in for $6,500, which sum was credited on Investment Company's note, leaving due something less than $2,000. During all of this time Gardiner continued to hold title to the apartment and likewise continued to collect and pay as agreed all net rents to Prudential. In June, 1937, appellant, as receiver, threatened to foreclose the second trust and sell the apartment, whereupon Gardiner notified Prudential that he would no longer turn over to it any future rents received from the property, and without objection or protest from it he collected and retained, as owner of the property, the net rents for June, July, August, and September, 1937, amounting to $6,435.61. The exact date does not appear, but we assume that appellant did foreclose in October, 1937, and became purchaser and owner of the property subject only to the first trust.

On this appeal, appellant-receiver says that the decision depends upon the single question of law, whether the resolution of Investment Company, requesting Gardiner to take title to the property for his own account, subject to the terms we have enumerated, created a trust in favor of Investment Company, to which appellant as receiver of the bank succeeded and which he is entitled to enforce in his own name.

Appellant insists that in the circumstances we have narrated the answer should be in the affirmative, but we think this is clearly wrong, for we can find no merit in the contention that when in 1935 the bank's receiver demanded payment of Investment Company's debt and upon default bought in the second trust note, he thereby succeeded to the rights of Investment Company in the September, 1932, agreement between it and Gardiner.

The resolution of Investment Company's board, on which appellant's claim hinges, was brought about in this fashion. Investment Company, as we have seen, held a second mortgage on property which the owner of the property was unable to discharge. The owner offered, instead, to convey its equity and be relieved of the debt. But there was also outstanding a third mortgage which, had Investment Company taken title, would have remained a lien on the property, and so logically it said to the holder of that lien—you take the property and without assuming any liability to us or to the holder of the first mortgage, try for a fixed period, i.e., until October, 1933, to work out the debt to us by devoting the net income to the discharge of the interest on the first lien and the payment of the balance to us. And to this Gardiner agreed. Assuming that his acceptance of the proposed plan imposed the duties of a trustee, the obligation by its very terms ran to Investment Company alone and was made alone for its benefit. Investment Company, not the bank, was then the owner of the second mortgage. In its pledge to the bank it expressly retained the right and title to both principal and interest until default in its primary debt. It owed no duty to the bank until default in its own debt to the bank, and in the respects mentioned never intended to create any. Nor did Gardiner. In the circumstances, no trust arose in favor of the bank. No one except a beneficiary or one suing on his behalf can maintain a suit against the trustee to enforce the trust or to enjoin or obtain redress for a breach of trust. Restatement of the Law of Trusts, § 200. And even if it be conceded the bank had an indirect interest in the performance of the undertaking, that is a very different thing from the privity necessary to enable it to enforce the contract by suit in its own name. National Bank v. Grand Lodge, 98 U.S. 123, 124, 25 L.Ed. 75; Williams v. Eggleston, 170 U.S. 304, 309, 18 S.Ct. 617, 42 L.Ed. 1047; German Alliance Ins. Co. v. Home Water Supply Co., 226 U.S. 220, 230, 33 S.Ct. 32, 57 L.Ed. 195, 42 L.R.A.,N.S., 1000. Even if it appears that the contract, when made, would inure to the bank's benefit, that is not enough to entitle it to demand its fulfilment. It must appear to have been the intention of the parties to secure to the bank the benefit of its provisions. Sayward v. Dexter, Horton & Co., 9 Cir., 72 F. 758, 765. Here, quite obviously, there was no such intention. Neither the bank nor the receiver ever knew of the resolution until the commencement of another phase of this litigation years after-

ward, and this, because it was not made for the bank's benefit, direct or remote.

■ But even if this conclusion be put to one side, there is another insuperable impediment to a suit of this nature, and that grows out of the fact that the agreement between Investment Company and Gardiner was limited to a definite date and bound nobody after that time. And as a matter of actual fact, it was terminated by agreement of Gardiner and Investment Company, as was their right,[1] in less than one year. So that in no view that we can think of can the agreement be revived now to sustain a suit—particularly at the instance of a stranger—for its enforcement. The rents not being pledged to secure the mortgage indebtedness, Gardiner as owner of the apartment property was entitled to receive and retain them until the foreclosure by the receiver in October, 1937. Hardee v. American Security & Trust Co., 64 App.D.C. 259, 77 F.2d 382. And by agreement with Prudential, to whom alone he was bound after termination of the September, 1932, agreement, he was entitled to retain the commissions allowed him for managing the property and collecting the rents. No one else could complain.

Affirmed.

---

[1] Helvering v. Helmholz, 296 U.S. 93, 97, 56 S.Ct. 68, 80 L.Ed. 76.