**Morton HIMMELFARB, Appellant,**

v.

**Jean H. HORWITZ, et al., Appellees.**

No. 86–206.

District of Columbia Court of Appeals.

Argued Dec. 11, 1986.

Decided Dec. 9, 1987.[*]

---

[*] This opinion was released in typed form prior to printing.

Harry L. Ryan, Jr., Washington, D.C., for appellant Morton Himmelfarb. James L. Rider, Washington, D.C., entered an appearance for Ada Naiman, et al., Trustees.

Michael F. Curtin, Washington, D.C., guardian ad litem.

Before ROGERS and STEADMAN, Associate Judges, and NEBEKER, Associate Judge, Retired.[**]

---

[**] Judge Nebeker was an Associate Judge of this court at the time the case was argued. His

NEBEKER, Associate Judge, Retired:

This is an appeal from an order of the trial court denying summarily the plaintiffs' and defendant Morton Himmelfarb's dual motions for a final declaratory judgment. The plaintiffs, in their capacity as trustees of the trust at issue here, had sought a declaratory judgment invalidating a provision of the trust which made the beneficiaries' entitlement to a share of trust income or corpus contingent on whether they "shall have married or be married to any person not of the Jewish faith or religion." Defendant Morton Himmelfarb, a person within the class of lifetime income beneficiaries, moved for the same relief. He had been disqualified pursuant to this provision by virtue of his marriage to a woman not of the Jewish faith or religion. The trial court ruled against them, concluding that the disqualification clause constituted a valid, partial restraint on marriage. As we shall show in the following pages, we are confronted (as was the trial court below) with a record revealing no real contest between present interested parties. We recognize that the trial court might properly give guidance to trustees who are in doubt as to their duties; however, once it becomes apparent that none of the beneficiaries present a contest, the court should refuse to exercise its equitable jurisdiction. We hold that the trial court erred in making a sweeping ruling on the interpretation of the trust. We offer no opinion on the underlying merits of the trial court's decision. It is sufficient for the trial court to refuse to exercise equitable jurisdiction because no interested beneficiary may thereafter be heard to challenge payments to Morton Himmelfarb.

The undisputed facts are that on December 30, 1938, Paul Himmelfarb (the "grantor") established an irrevocable inter vivos trust (the "trust" or "1938 trust"), to which was added a clarifying amendment on December 5, 1941. The trustees were directed to invest and reinvest the trust corpus during the life of the grantor, thereby accumulating income to be added to the corpus. The trust provided further that upon the death of the grantor, they were to distribute the current income of the trust in equal shares, with one share going to each of the grantor's living children and one share to be distributed among the children (if any) of any deceased child of the grantor, *per stirpes*. Upon the death of the last surviving child of the grantor, the trust was to be terminated and the trust corpus distributed *per capita* to the grandchildren of the grantor who were then living.[1]

This action specifically concerns paragraph D(2) of the trust which provides as follows:

> No share of the income or division of the corpus of the estate hereby created shall be made to any beneficiary hereunder if, at the time such payment or distribution shall, by the terms hereof, be due, *such beneficiary shall have married or be married to any person not of the Jewish faith or religion.*

(Emphasis added.)

The grantor died on January 16, 1968, and was survived by all eight of his children, as well as by numerous grandchildren. The trust's disqualification clause of paragraph D(2) came into play because one of the grantor's sons, defendant Morton Himmelfarb, had a spouse, Mary Himmelfarb, who was "not of the Jewish faith or religion." Morton and Mary were married on September 7, 1966. As far as we know, they are still husband and wife today, and Mary Himmelfarb remains not of the Jewish faith or religion.

The litigation culminating in this appeal is actually rooted in a 1966 suit filed by Morton Himmelfarb in the United States District Court for the District of Columbia. Morton brought suit in the district court against, among others, Ada Naiman, Frances Wolf and Lillian Cooper, three of his siblings and children of Paul Himmelfarb,

status changed to Associate Judge, Retired, on September 1, 1987.

**1.** The copy of the trust and its clarifying amendment which are contained in the record on

appeal are partly illegible. However, the parties are in agreement as to the pertinent provisions of the trust.

the grantor of the trust at issue in this case. It appears that Naiman, Wolf and Cooper were named as defendants in that action individually, and in their capacity as trustees of both a 1948 and a 1965 trust of which Morton and his first wife, Reba, were grantors. The action was predicated in part on Morton's claim that the trustees violated the terms of the 1948 trust, and the relief sought on this basis was, *inter alia,* a return of assets to this trust. In the same action, but apparently on other grounds, Morton requested the dissolution of his 1965 trust.

On September 26, 1975, the district court entered a consent judgment in the action which, with respect to Morton's claims concerning the 1948 and 1965 trusts, was generally favorable to him. The consent judgment also contained the following provision pertaining to Paul Himmelfarb's 1938 trust:

> The trustees [Naiman, Wolf and Cooper] are also trustees under a certain trust agreement dated December 30, 1938, of which Paul Himmelfarb was the donor, which is commonly known as Paul Himmelfarb Trust No. 1, under which the donor's children, including Morton and the trustees, are life income beneficiaries and the donor's grandchildren, including Morton's children who are parties to this agreement, are residuary beneficiaries. The trust contains a provision ... [disqualifying a beneficiary who "shall have married or be married to any person not of the Jewish faith or religion."] Because of this provision, the trustees have declined to make payments therefrom to Morton since his marriage to Mary, who is not of the Jewish faith, but have accumulated such income pending judicial interpretation of the Trust. The trustees agree that they, in their capacity as trustees of Paul Himmelfarb Trust No. 1, will promptly file a civil

lawsuit in a court of competent jurisdiction in proper form, to have said restraint on marriage declared to be void and unenforceable as to all beneficiaries, and for such other relief as will permit payment of his share of current and accumulated and future income to Morton during his lifetime, and will permit participation of the issue of Paul Himmelfarb as residuary beneficiaries in accordance with the terms thereof. The parties agree to consent to such an interpretation and declaration of the Trust, and further consent that all amounts now or hereafter due to Morton Himmelfarb from the Paul Himmelfarb Trust No. 1 may be paid directly to Morton personally and retained by him, free of any trust.*

---

*The funds now held by the Paul Himmelfarb Trust No. 1 as Morton Himmelfarb's undistributed share, shall be paid to Thomas E. Schumaker as escrow agent and all income accruing thereon during the pendency of this litigation shall accumulate for Morton Himmelfarb.

Curiously, though, and contrary to the trial court's understanding here of what took place in the district court, there is no indication that Naiman, Wolf and Cooper were also sued in their capacity as trustees of Paul Himmelfarb's 1938 trust. The litigation in the district court, it seems, concerned only the 1948 and 1965 trusts of which Morton was a grantor. And this would explain why only some of the persons designated by class in the 1938 trust as lifetime or residuary beneficiaries were named as defendants in the district court action and appear as having consented to the judgment. Indeed, the persons so named appear to be only those with an interest also in Morton's 1948 and 1965 trusts.[2]

On August 3, 1976, Naiman, Wolf and Cooper, in their capacity as trustees of Paul Himmelfarb's 1938 trust[3] and pursu-

---

**2.** The record now before us contains very little of the record which existed in the district court. Absent, for example, is Morton Himmelfarb's complaint. Our understanding of what occurred in the district court is derived solely from its consent judgment, a copy of which is in the record before this court.

**3.** There is no dispute that Naiman, Wolf and Cooper are the present trustees of the 1938 trust. We note, however, that the trust itself named Annie Himmelfarb, Albert Himmelfarb and Jean Horwitz as trustees. Albert Himmelfarb and Jean Horwitz are children of the grantor and were named as defendants in the instant

ant to the district court's consent judgment, filed a complaint in the Superior Court for a declaratory judgment, naming as defendants (1) their siblings, the remaining children of the grantor and lifetime income beneficiaries of the trust, including Morton Himmelfarb, (2) all living grandchildren of the grantor, the potential income beneficiaries *per stirpes* and corpus beneficiaries *per capita*, and (3) Thomas E. Schumaker, the holder of Morton's undistributed share of trust income pursuant to the consent judgment. In their complaint, which was appended with a copy of the consent judgment, the trustees alleged that "[a] dispute now exists between the plaintiffs and the defendant, Morton Himmelfarb, as to the interpretation and validity of Paragraph D, subparagraph 2 of the Trust Instrument, and as to Defendant Morton Himmelfarb's exclusion thereunder from sharing in the distribution of the income of such trust." The trustees further averred that

> [d]efendant Morton Himmelfarb contends that Paragraph D, subparagraph 2 of the Paul Himmelfarb Trust No. 1 is invalid by reason of its being violative of the First Amendment of the Constitution of the United States of America, contrary to the public policy of the United States of America and the District of Columbia, and furthermore, that such restriction is an illegal and invalid restraint on marriage.

In their prayer for relief, the trustees requested, *inter alia*, the appointment of a guardian *ad litem* "to protect the interests of any as yet unborn beneficiaries," a judgment declaring the trustees' duties under the 1938 trust and, in particular, a determination of the validity of paragraph D(2), and a judgment directing Schumaker "to release those funds he is holding in escrow and directing him to the person or class of persons to whom such distribution should be made and in what amounts."

The trustees moved for summary judgment in the action on July 21, 1978, asking for a declaration from the trial court as to their duties under the 1938 trust and an order directing distribution of the funds held in escrow by Schumaker. In their accompanying statement of undisputed material facts, the trustees represented that the district court consent judgment obligated them to challenge the validity of paragraph D(2) of the trust. The trustees also related in their statement that "Morton Himmelfarb has challenged the trustees' actions in refusing to distribute to him his share of the trust income. Morton Himmelfarb contends that paragraph D(2) of the trust instrument is void as a matter of law." And in their memorandum of points and authorities in support of summary judgment, the trustees, as contemplated by the consent judgment, advocated the invalidity of the provision.

The trustees' motion for summary judgment was not opposed. On October 31, 1978, the trial court (Pryor, J.) entered summary judgment "subject to proof" as to the defendants who had answered the trustees' complaint. These persons were Jean Horwitz (a daughter of the grantor), Schumaker, and seven of the grantor's grandchildren. Yet, the trial court denied summary judgment in favor of the trustees as to the defendants who had not answered the complaint. Nevertheless, in 1979 default judgments were entered against each of them. These persons were the four remaining children of the grantor, including Morton Himmelfarb, and the remaining eleven grandchildren.

On January 21, 1980, the trustees moved for a "Final Declaratory Judgment," requesting that paragraph D(2) of the 1938 trust be declared void and that an order be entered "that funds presently held in escrow for Morton Himmelfarb be released to him, and that henceforth his share of the income from the trust be disbursed to him." This motion was also unopposed.

action. Annie Himmelfarb, who was the wife of the grantor, died sometime after the trust was executed. Julian Himmelfarb, also a child of the grantor and a person named as a defendant in this suit, was designated in the 1941 clarifying amendment as Annie's replacement trustee. The record does not reveal how or when Naiman, Wolf and Cooper were substituted as trustees.

However, after a hearing, the trial court (Belson, J.) on August 26, 1980, denied the motion without prejudice. The court reasoned that declaratory relief in favor of the trustees was inappropriate in view of the fact that the proceedings were not truly adversarial. In this respect, the court observed that "[n]o party has briefed or advocated what appears preliminarily ... to be the stronger side of the issue presented. More specifically, no party has argued that a partial restraint upon marriage of beneficiaries of a trust, so worded as not to encourage divorce, can properly be imposed by a donor as a provision of a trust agreement."

Then, on June 26, 1984, the trustees moved for the appointment of a guardian *ad litem* to advocate against their position and for reconsideration of their motion for a final declaratory judgment. At this point, Morton Himmelfarb filed an opposition to the motion, arguing principally that there was no justification for a guardian's intervention. On September 22, 1984, Morton filed his own motion for summary judgment to have the disqualification clause declared invalid. The trustees did not oppose this motion, but renewed their request for the appointment of a guardian *ad litem*. And on December 21, 1984, the trial court granted this request, appointing the guardian *ad litem* who appears also in this appeal.

The decision now challenged was rendered by the trial court (Nunzio, J.) on January 6, 1986, after a hearing. The court concluded that there were no material facts in dispute, and that the position advocated by the guardian—that paragraph D(2) of the 1938 trust constituted a valid, partial restraint marriage—was correct as a matter of law. It therefore denied the declaratory relief sought in Morton Himmelfarb's favor and ordered the trustees to comply with the terms and conditions of the trust as stated therein. Morton then appealed.[4]

Morton's sole contention is that the 1978 grant of summary judgment by the trial court in his favor, as well as the consent judgment entered in the district court, operated as the law of the case and barred the subsequent and contrary rulings by different judges on August 26, 1980, and January 6, 1986, the latter of which resulted in this appeal. He does not challenge on its merits the ultimate ruling of the trial court that paragraph D(2) of the 1938 trust constituted a valid, partial restraint on marriage. We do not reach this question. On the issue raised, however, we agree with the appointed guardian *ad litem* that the 1978 judgment was not sufficiently final to operate as the law of the case. *See Kaplan v. Pointer*, 501 A.2d 1269, 1270 (D.C. 1985) (quoting *P.P.P. Productions, Inc. v. W & L, Inc.*, 418 A.2d 151, 152 (D.C.1980) (per curiam)). Indeed, the judgment entered was expressly made "subject to proof" and did not dispose of the case as to the several defendants who had not answered the complaint. The consent judgment, on the other hand, which may have served as a basis for the 1978 grant of summary judgment, was the product of litigation concerning other trusts. Moreover, only a few of the parties involved in this litigation were also parties before the district court. Therefore, the consent judgment was not binding on the trial court in this case.

One way or another, each party to the present suit has at least tacitly assented to Morton Himmelfarb's position. The trustees, Naiman, Wolf and Cooper (three of the grantor's children and lifetime income beneficiaries), in filing the complaint and motion for summary judgment, sought a declaration from the trial court in Morton's favor. This was done pursuant to the district court consent judgment, by which they agreed to have the trust's disqualification clause declared invalid. The grantor's other living children (lifetime income beneficiaries), including Morton, were named as defendants in the suit but never objected to

---

4. We note that the trustees, who did not appeal, have filed a statement joining in the brief filed by appellant Morton Himmelfarb. The remaining defendants, who are designated as appellees in the caption of the docket in this court, have not entered an appearance. The guardian *ad litem* appears before this court in the posture of an appellee.

the relief sought. Jean Horwitz, in her answer to the complaint, agreed to have the question of paragraph D(2)'s validity submitted to the court for resolution; Horwitz did not, however, oppose the trustees' initial motion for summary judgment and had summary judgment entered against her. And Albert, Alvin and Julian Himmelfarb, who did not answer the complaint even though they had been served process, had default judgments entered against them by the trial court.

Similarly, none of the grantor's eighteen living grandchildren (potential income beneficiaries *per stirpes* as well as corpus beneficiaries *per capita*)—all of whom were named as defendants in the action and were served process—opposed the relief sought by the trustees in their complaint and motion for summary judgment. Those who did not answer the complaint and who were adjudged in default were Robert Naiman, Irma Greenspoon, Norma Lee Horwitz, Lillian Kronstadt, Jay Wolf, Franklin Wolf, Brenda Price, Bernard Cooper, Rona Robb, Annetta Oestreicher and Annetta Himmelfarb. The remaining seven grandchildren of the grantor all answered the Superior Court complaint. Of these, four are children of Morton Himmelfarb and were parties to the 1975 consent judgment: Carol Lynn Himmelfarb, Barbara Peters, Franklin Himmelfarb, and Marlene Leon. Peters, Leon and Carol Lynn Himmelfarb requested in their answer that relief in favor of Morton be granted and did not oppose the trustees' motion for summary judgment. Franklin Himmelfarb, in his answer, agreed to have the issue submitted to the court for resolution. However, like his siblings, he did not oppose the motion for summary judgment, and summary judgment was entered against him. Of the other three grandchildren who answered the complaint, Norman Horwitz and Annetta Kushner also submitted the issue to the court, did not oppose the trustees' motion for summary judgment, and had summary judgment entered against them. The re-

maining grandchild, Carole Preston, asked in her answer that the disqualification clause be declared invalid. She too did not oppose summary judgment and had it entered against her.

The final defendant named in the trustees' complaint was Thomas E. Schumaker who, pursuant to the district court consent judgment, holds Morton Himmelfarb's undistributed share of trust income. A notation in the record indicates that Schumaker, in response to the complaint, filed an affidavit in the trial court. However, the affidavit does not appear in the record before this court. In any event, as the trial court's initial order (granting summary judgment as to some of the defendants) reveals, Schumaker did not oppose the trustees' motion and summary judgment was entered against him also.

Therefore, no one named as a defendant in this suit had, at any stage of the proceedings in the trial court, disputed the trustees' and Morton Himmelfarb's claim that the disqualification clause of the 1938 trust is unenforceable. Nor had any party, by way of pleading, objected to Morton receiving what he claims he is by law entitled to—the undistributed share of trust income held in escrow. Therefore, at the time of the entry of the trial court's judgment and at present, all who might challenge payments to Morton are precluded from doing so in the future.

We recognize that there was no opposition before the trial court (and now on appeal) to the trustees' and Morton's legal position respecting the validity of paragraph D(2). However, this opposition came from the guardian *ad litem*, who was appointed by the trial court "to brief and advocate the other side of the issue presented in this cause." Hence, it appears that the guardian was not appointed to represent potential residuary beneficiaries consisting of yet-unborn grandchildren of the grantor,[5] but rather to advocate a legal

---

**5.** It is conceivable, even if it is unlikely, that prior to the termination of the 1938 trust, additional grandchildren of the grantor could be born. Each grandchild's residuary interest in

the 1938 trust is in trust corpus only, unless and until his or her parent (who is a child of the grantor and lifetime income beneficiary) predeceases at least one of the grantor's other chil-

side of the case which the parties, because of their apparent approval of, or indifference to Morton's claim, had not themselves litigated.

All this caused us to question, initially, whether there is a justiciable case before this court making the validity of paragraph D(2) an appropriate issue for judicial consideration, as it appears there was no controversy existing between parties having adverse legal interests. *See Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937); *McIntosh v. Washington*, 395 A.2d 744, 749 (D.C.1978); *Smith v. Smith*, 310 A.2d 229, 231 (D.C.1973). But the subject of justiciability was never broached in the trial court, perhaps because reliance was placed on the traditional right of a trust to apply to a court for instructions as to the administration of a trust. RESTATEMENT (SECOND) OF TRUSTS § 259 (1959).[6]

■■■ However, the trial court and the parties overlooked two settled principles of trust law that were dispositive of the instant proceeding. First, a request for instructions may relate only to the present conduct of the trustee. "The court will not instruct the trustee as to questions which may never arise or may arise in the future but which have not yet arisen." RESTATEMENT (SECOND) OF TRUSTS § 259 comment c (1959). *See* 3 A. SCOTT, THE LAW OF TRUSTS § 259, at 2215 (3d ed. 1967 & Supp.1985) (and cases cited). Second, the only parties with standing to challenge the administration of a private trust (at least where the settlor is deceased, as here) are the beneficiaries with an interest in the aspect challenged. RESTATEMENT (SECOND) OF TRUSTS § 200 (1959); *Hall v. Gardiner*, 75 U.S. App.D.C. 226, 126 F.2d 227 (1942); *cf. Washington Loan & Trust Co. v. Colby*,

71 App.D.C. 236, 239, 108 F.2d 743, 746 (1939).

The only issue presently faced by the trustees relates to the distribution of past and current income to Morton. As we have indicated, the only beneficiaries with an interest in this issue are the now living children and some of the living grandchildren of the grantor, all of whom are adults and named parties to the action and all of whom, by their answers or nonresponses, have acquiesced in the proposed action by the trustees to distribute to Morton his share of trust income. Although the complaint is phrased in the traditional language of a petition seeking instructions, attached to the complaint was a copy of the 1975 consent judgment by which the trustees agreed to consent to an interpretation and declaration of the trust allowing Morton to participate as an income beneficiary and further consented that all amounts due to Morton from the trust may be paid directly to Morton and retained by him free of any trust. In effect, the trustees obligated themselves to make income distributions to Morton when they could do so free of any liability. The purpose of the complaint was perfectly plain. Accordingly, all current income beneficiaries are barred from any future challenges to income payments made to Morton.

This state of affairs invokes a corollary to the two principles of trust law mentioned above. "The trustee is not entitled to instructions as to his powers or duties, unless there is a reasonable doubt as to the extent of his powers or duties." RESTATEMENT (SECOND) OF TRUSTS § 259 comment b (1959). Once the responses (or lack thereof) came in indicating that no beneficiary challenged the proposed action by the trustees, no occasion existed for the trial

---

dren. At that point, the grandchild (or grandchildren) is entitled to the parent's share of the trust income *per stirpes*. Thus, yet-unborn grandchildren of the grantor could not have any interest in presently distributed trust income, including the share of income to which Morton claims he is entitled.

**6.** In another context we have held that the actual case or controversy requirement applies in

the trial court to actions for declaratory judgment. *Smith v. Smith, supra*, 310 A.2d at 231. However, where a trustee seeks guidance, we think ordinary rules of equity should permit access to the trial court without strict regard to the normal rules. *Cf. Industrial National Bank of Rhode Island v. Rhode Island Hospital*, 99 R.I. 289, 292, 207 A.2d 286, 287–88 (1965).

court to make an interpretation of the trust.[7]

Accordingly, the order appealed from is reversed and the case remanded for trial court disposition based on the predicate that payment to Morton Himmelfarb is without risk of successful challenge by present beneficiaries.

*So ordered.*

---

7. In the apparently unlikely event that a future grandchild comes into being who is entitled to a share of trust income, a new petition for instructions may of course be brought. We further recognize that because of the incompleteness and imperfections of the record on appeal and otherwise, certain assumptions in this opinion may not be entirely correct. If so, the trial court on remand may take further action as appropriate.